ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In Re:

LEATHERSTOCKING ANTIQUES, INC.,

                        Debtor.
------------------------------------------------------------------x
RUBIN STERNGASS, GUY J. BUONOCORE,
REBA MAY BUONOCORE a/k/a REBA
STERNGASS, ABBIE MIRIAM GOLDBERG
a/k/a ABBIE STERNGASS and JOHN DOE and JANE
DOE (said names being fictitious and it being the
intention of Plaintiff to designate any and all persons
or entities acting in connection with or on behalf
of defendants Rubin Sterngass, Guy J. Buonocore,
Reba May Buonocore a/k/a Reba Sterngass, and/or
Abbie Miriam Goldberg a/k/a Abbie Sterngass with
respect to the real properties identified in this
Complaint as the Rental Properties),

                        Appellants,

            v.

MARIANNE T. O'TOOLE, as Chapter 7 Trustee
of the estate of Leatherstocking Antiques, Inc.,

                        Appellee.
------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/30/13

**OPINION AND ORDER**

12 Civ. 6832 (ER)

Ramos, D.J.:

    Rubin Sterngass, Guy J. Buonocore, Reba May Buonocore, a/k/a Reba Sterngass, and/or Abbie Miriam Goldberg, a/k/a Abbie Sterngass, Appellants, appeal from the Order dated July 19, 2012 (the "Order"), of the United States Bankruptcy Court for the Southern District of New York, Judge Robert D. Drain. Doc. 1.[1] As relevant to this appeal, the Order enjoins Appellants herein from (1) interfering in the Trustee's administration of the Estate of Leatherstocking

---

[1] References to "Doc." refer to documents filed in the instant appeal. References to "Bankr. Doc." refer to documents filed in the underlying adversary proceeding bankruptcy court, Marianne T. O'Toole, as Chapter 7 Trustee of the Estate of Leatherstocking Antiques, Inc., v. Rubin Sterngass, et al., No. 10-8265 (RDD).

Antiques, Inc. ("Leatherstocking" or the "Debtor" or the "Estate"), entering upon certain rental properties belonging to the Estate (the "Rental Properties), communicating with tenants in the Rental Properties, and collecting rent from the tenants of the Rental Properties; and (2) taking possession of, transferring, conveying or otherwise disposing of property of the Estate, including rental income from the Rental Properties.  The Order also directs the Appellants to turn over all rental income generated by the Rental Properties since May 18, 2012, together with an accounting of all monies that have been collected, held or expended by the Appellants on behalf of the Debtor since May 18, 2012.  Doc. 1-1.   For the reasons set forth below, the Order of the bankruptcy court is AFFIRMED.

### I. Background

The following facts are undisputed.

The Debtor is a New York limited liability company.  Bankr. Doc. 1 (Complaint) ¶ 4. Appellant Rubin Sterngass ("Sterngass") is the Debtor's President and Chief Executive Officer and has a 10% membership interest in the Debtor.  *Id.* ¶¶ 6-7.  Appellants Reba and Abbie Sterngass are Sterngass' daughters, and Appellant Guy Buonocore is Sterngass' son-in-law.  *Id.* ¶¶ 9, 11, 13.

On April 13, 2010, Leatherstocking filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  *Id.* ¶ 15.  On Schedule "A" to its petition, Leatherstocking listed a fee simple interest in the following seven properties:

- 701-705 A Route 9W, Rockland Lake, New York (the "701-705 A Property");
- 707-709 Route 9W, Rockland Lake, New York (the "707-709 Property");
- 17 High Street, Rockland Lake, New York (the "High Street Property");
- 744 Route 9W, Rockland Lake, New York  (the "744 Property");

- 734 Route 9W, Rockland Lake, New York (the "734 Property");

- 741 Route 9W, Rockland Lake, New York (the "741 Property"); and

- 749 Route 9W, Rockland Lake, New York (the "749 Property").

*Id.* ¶¶ 16-22.

The Debtor reported on its Schedule "G" that is was a lessor on 14 residential leases. *Id.* ¶ 23. The 14 residential leases listed on the Debtor's Schedule "G" are for the three Rental Properties, to wit: the residential units at the 707-709 Property, the High Street Property, and the 701-705 A Property (hereinafter, the "Rental Properties"). *Id.* ¶ 24.

Approximately two years after the filing of the petition, on May 18, 2012, Leatherstocking's case was converted from Chapter 11 to Chapter 7 of the Bankruptcy Code (the "Conversion Order"). *Id.* ¶ 25. No appeals of the Conversion Order were timely filed, and the Order converting the case to Chapter 7 is a final, non-appealable Order. *See* Doc. 10 (Brief of Appellee Marianne T. O'Toole, As Chapter 7 Trustee of the Estate of Leatherstocking Antiques, Inc.) ("Trustee's Br.") at 4. On May 22, 2012, Marianne T. O'Toole was appointed as the interim Chapter 7 Trustee of the Debtor's estate. Bankr. Doc. 1 ¶ 29. By Order dated July 5, 2012, the Trustee was authorized to continue to operate the Debtor's business, *nunc pro tunc* to May 22, 2012. *Id.* ¶ 30.

Thereafter, the Trustee had a series of communications with Debtor's counsel and Sterngass advising them of her appointment and directing them to turn over to her any rents collected from the Rental Properties for the period May 18, 2012 forward. Specifically:

- By letter dated May 30, 2012, Trustee's counsel advised the Debtor, through its counsel of record, that she was the sole representative of the Debtor's bankruptcy estate. *Id.* ¶ 32.

3

- On or about June 1, 2012, the Trustee and her counsel advised Sterngass by telephone that all rental income collected from the Rental Properties after May 18, 2012 should be immediately turned over to the Trustee. *Id.* ¶ 33.

- By email dated June 3, 2012 (the "June 3 email"), Trustee's counsel advised Sterngass' counsel that all funds being generated from the Rental Properties belong to the Debtor's estate and only the Trustee had authority over such funds. *Id.* ¶ 34.

- The June 3 email was forwarded directly to Sterngass on June 4, 2012. *Id.* ¶ 35.

- By letter dated June 5, 2012, Trustee's counsel advised Sterngass that he was obligated to turn over any and all rental income of the Debtor, including any checks or payments received on or after May 18, 2012, and directed Sterngass to turn over any such rental income on or before June 7, 2012. *Id.* ¶ 36.

Thereafter, on June 6, 2012, the Trustee and her counsel posted notices in English and Spanish at the Rental Properties, and on the doors to every unit at the Rental Properties, directing the tenants to forward all rent payments (as of May 18, 2012 and going forward) to the Trustee and to make all rent payments payable to the Trustee. *Id.* ¶ 37.

On or about June 12, 2012, the Trustee and Trustee's counsel met with, among others, Sterngass, his daughter Reba and Debtor's counsel. At that meeting, the Trustee and her counsel directed Rubin and Reba Sterngass and Debtor's counsel to immediately turn over any and all rental income of the Debtor received on or after May 18, 2012. *Id.* ¶¶ 38-39.

Notwithstanding that direction, on June 28, 2012, the Trustee's paralegal was advised by telephone that the Appellants directed the tenants at the Rental Properties to turn over their monthly rent to Sterngass. *Id.* ¶ 40. By letter dated June 28, 2012 (the "June 28 Letter"), the Trustee advised Sterngass that the Trustee was the sole representative of the Debtor's estate and that her duties included collecting and reducing to money property of the Debtor's estate. *Id.* ¶ 41. By email dated June 28, 2012, Sterngass advised the Trustee and her counsel that the June 28 Letter was "simply inaccurate," meaning that he had not directed the tenants to pay the rent

4

money to him.  *Id.* ¶ 42.  Notwithstanding Sterngass' denial, the Trustee was advised on July 3, 2012 by multiple tenants at the Rental Properties that Sterngass and Guy Buonocore were on the Rental Properties demanding and collecting rent from tenants on July 2, 2012 and/or July 3, 2012.  *Id.* ¶ 43.

By email dated July 3, 2012, the Trustee again advised Sterngass that any monies collected from the Rental Properties should be turned over to the Trustee immediately.  *Id.* ¶ 44.  On that same day, July 3, the Trustee's paralegal telephoned each of the tenants for which contact information was available and was informed by a "majority" of the tenants that she was able to contact that they had paid their rent for June and July 2012 to Rubin Sterngass.  *Id.* ¶¶ 45-47.  The Trustee asserts that as of that date, Appellants had collected not less than $28,500.00 in rent payments relating to the Rental Properties since May 18, 2012.  *Id.* ¶ 49.

The Trustee commenced the adversary proceeding below on July 10, 2012, seeking injunctive relief directing Appellants to turn over the rental income they had collected in contravention of the Trustee's directions.  Trustee's Br. at 6.  The bankruptcy court issued an order scheduling a hearing for July 18, 2012.  *Id.*  As reported by the Trustee, on the morning of the hearing, Rubin Sterngass sent an email to Anna Martinez, a bankruptcy analyst in the Office of the United States Trustee, which, among other things, attached two spreadsheets detailing the rents he had collected from the Rental Properties for the period May to July 2012, totaling $39,085.00.  *Id.* at 7-8.

At the hearing on July 18, 2012, Appellants acknowledged collecting rent from the Debtor's Rental Properties and communicating with tenants at the Properties.  *Id.* at 8.  The bankruptcy judge advised Appellants as follows:

> The Trustee in this case … controls this property.  The debtor and the debtor's owners, you, do not.  The Trustee decides who collects

5

>       the rent.  She has made it very clear she does not want anyone
>       other than her designated agents to collect the rent.  None of you is
>       to collect the rent.  I believe that was already clear.  I believe you
>       have willfully ignored that.  But it is now crystal clear because I
>       have made it crystal clear to you.  You are not to collect the rent.
>       Let the Trustee and her agents do that.  You may disagree, you
>       may think that you will collect more rent than she will, but that is
>       her decision.  You cannot undo it by yourself.
>
>       Secondly, you are not authorized to collect the rent that you have
>       collected, and you must immediately turn it over to the Trustee.
>       You cannot keep it.

*Id.* at 8-9.

The bankruptcy court issued the Order on July 19, 2012 and Appellants filed a Notice of Appeal on July 26, 2012.  Bankr. Docs. 11 and 14, respectively.

## II.     Procedural Background

On September 10, 2012, the Notice of Appeal was docketed in the instant matter.  Doc. 1. The Designation of the Bankruptcy Record on Appeal pursuant to B.R. 8006 was timely filed by Appellants on that day as well.  Doc. 2.  The Trustee filed a Counterstatement of Issue Presented on Appeal and Counter Designation of Items to be Included in the Record on Appeal also on the same day.  Doc. 3.  Appellants' opening brief was filed on September 19, 2012.  Doc. 11.  As the Trustee notes, the brief does not address the issues actually appealed from (i.e., the July 19 Order), but rather seems to take issue with the prior order of May 2012 converting the underlying bankruptcy to a Chapter 7 proceeding.  The Trustee responded on October 8, 2012, Doc. 10, and Appellants replied on October 22, 2012.  Doc. 13.[2]

---

[2] The Court notes that, in addition to the papers filed in response to the Trustee's motion, Sterngass has filed several letters with the Court touching on issues related to this and a related proceeding, *In re Leatherstocking Antiques, Inc.*, 12-cv-7758.  *See, e.g.*, Docs. 5, 6, 9, 15, 17-20.  The Court has reviewed all of Appellant's submissions, and has considered them to the extent relevant.

### III.   Discussion

#### A.  Standard of Review

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges."  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo.  Overbaugh v. Household Bank, N.A. (In re Overbaugh),* 559 F.3d 125, 129 (2d Cir. 2009); *see also* Fed. R. Bankr. P. 8013 (a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").

A party seeking a preliminary injunction generally must establish two elements:  (1) the likelihood of irreparable injury in the absence of an order or injunction; and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for the litigation plus a balance of hardships "tipping decidedly" in that party's favor.  *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000); *see also Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009).  "More generally, it also may be appropriate for the court to consider the effect of the requested order on the public interest."  11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951 (2d ed.).  As relevant to this appeal, loss of an ongoing business can constitute irreparable harm.  *See Roso– Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125– 26 (2d Cir.1984) (holding that loss of an "ongoing business representing many years of effort

and the livelihood" of its owners constitutes irreparable harm); *Nw. Airlines Corp. v. Assoc. of Flight Attendants-CWA (In re Nw. Airlines Corp.)*, 349 B.R. 338, 384 (S.D.N.Y. 2006) ("Loss of an ongoing business can constitute irreparable harm."), *aff'd*, 483 F.3d 160 (2d Cir. 2007); *Travellers Int'l AG v. Trans World Airlines, Inc.*, 684 F. Supp. 1206, 1216 (S.D.N.Y. 1988) ("[L]oss of a business constitutes irreparable injury and thus is not compensable by a damage award.").

### B.  The Bankruptcy Court's Order was Properly Granted

As set forth above, after having been duly appointed, the Trustee of the Estate provided notice to Appellants and their counsel that they were to cease attempting to collect rents due to the Debtor from the Rental Properties, and that they should turn over to the Trustee all rents that were collected by them after the Trustee's appointment.  At the hearing held on July 18, 2012, Appellants acknowledged that they were directed by the Trustee to cease collecting rents and acknowledged that notwithstanding that direction, they continued to collect the rents.  Indeed, at the hearing, Judge Drain was provided with the two spreadsheets prepared by Sterngass documenting the rents that Appellants had collected from the Rental Properties during the period May to July 2012.  The bankruptcy court considered those records and correctly concluded that the Trustee, as the sole representative of the Debtor, had the authority to control the Debtor's estate and to determine how the rents should be collected and by whom.  The court also correctly concluded that Appellants were not authorized to collect or retain property of the Estate. The Order that is the subject of this Appeal was therefore properly granted.

<u>The Trustee Is The Sole Representative Of The Debtor's Estate</u>

A bankruptcy trustee is the representative of the debtor's estate, 11 U.S.C. § 323(a), and is charged with, among other things, collecting and reducing to money the property of the estate,

accounting for all property received, and filing periodic reports and summaries of the operation of the debtor's business. See 11 U.S.C. §§ 704 (a)(1), (2), (8). There can be no dispute that at the time the Order was entered, the Rental Properties belonged to the Debtor's estate and any income generated from the Rental Properties was also property of the Debtor's estate. Accordingly, Appellants, being in possession, custody or control of property that the Trustee had authority to use, sell, or lease, could be and were properly directed to by the Trustee to deliver to her and account for the income generated by the Rental Properties. *See* 11 U.S.C. § 542(a).

The bankruptcy court properly determined that Appellants had interfered in the Trustee's administration of the Estate by collecting the rents and failing to turn over the rental income despite numerous requests. At the Hearing, Appellants did not dispute the Trustee's allegations. The record "establishes that the Bankruptcy Court considered Appellants' arguments and appropriately rejected them because the [re]ntal [i]ncome is undisputedly property of the Debtor's estate and the Trustee is undisputedly the sole representative of the Debtor's estate." Trustee's Br. at 13.

### *The Bankruptcy Court Applied The Correct Standard For Injunctive Relief*

The bankruptcy court correctly determined that the Debtor's estate would be irreparably harmed absent the requested relief because the rental income was necessary for the continued operation of the Debtor's business. Such income was obviously necessary to pay real estate taxes, utilities, insurance, maintenance and other costs associated with the operation of the Rental Properties. In addition, injunctive relief was necessary to prevent Appellants from diverting the assets of the Estate during the pendency of the adversary proceeding below, and to preserve the ability of the Trustee to continue to operate the Debtor's business for the benefit of its creditors.

The bankruptcy court also correctly determined that the Trustee was likely to succeed on

the merits of her claims.  As noted, the facts below were not in dispute.  The rental income was property of the Debtor's estate and Appellants did not turn it over to the Trustee upon request as they were required to do.  Because the rental income clearly constitutes property of the Estate, the bankruptcy court properly concluded that the Trustee had demonstrated a strong likelihood of success on the merits of her claim for turnover of the rental income.  *See, e.g., United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (Section 542(a) requires turnover of property of the estate to the trustee).

Similarly, the Trustee established a likelihood of success on her claim for unjust enrichment.  To succeed on a claim for unjust enrichment, a plaintiff must establish that: (1) the defendant benefitted; (2) at the expense of the plaintiff/debtor; and (3) that equity and good conscience require restitution.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004) (citation omitted).  Here, the rental income is indisputably the property of the Debtor's estate.  By collecting and retaining the rental income, Appellants improperly benefitted at the expense of the Debtor and its creditors.  Thus, the bankruptcy court properly granted the requested relief.

Finally, the Order below was fully consistent with public policy.  As the Trustee notes, "[i]t is axiomatic that public policy favors the enforcement of, and adherence to, clear and unambiguous provisions of the Bankruptcy Code."  Trustee's Br. at 15.  Here, the bankruptcy court properly determined that the rental income was the property of the Debtor's estate, and that as the sole representative of the Estate, the Trustee was entitled to insist that the rental income be turned over to her.  Such a request is authorized and enforceable pursuant to Section 542 of the Bankruptcy Code.  Thus, because the Order below gives effect to the relevant provisions of the Bankruptcy Code, and provides for the efficient administration of the Debtor's estate for the

benefit of its creditors, it was completely consistent with public policy.

### IV. Conclusion

For the reasons set forth above, the bankruptcy court's Order is AFFIRMED. The Clerk of the Court is respectfully directed to docket this decision and close the case.

It is SO ORDERED.

Dated:   September 30, 2013
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.